UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BEST BUY STORES, L.P., | NO. CIV. 2:10-389 WBS KJN |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| MANTECA LIFESTYLE CENTER, LLC, | |
| Defendant. | |

----oo0oo----

        Plaintiff Best Buy Stores, L.P. brought this action against defendant Manteca Lifestyle Center, LLC alleging various claims arising out of plaintiff's lease with defendant. Presently before the court is defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.    Factual and Procedural Background

        On July 10, 2007, defendant entered into a written lease whereby it agreed to lease plaintiff 30,038 square feet of space at a retail development known as the Promenade Shops at

1

Orchard Valley ("Promenade") in Manteca, California.  (Compl. ¶¶ 1, 8.)  Article 8 of the lease agreement contains a Co-Tenancy provision, which was subsequently modified by amendment of the parties on January 19, 2009.  (Id. ¶¶ 8, 10.)  The amended version of the provision states:

> As used herein, the "Opening Co-Tenancy Condition" shall mean that, as of the Commencement Date, Tenant shall not be required to open for business unless sixty percent (60%) (not including Best Buy) of the gross leasable area of the Shopping Center are open and operating at the Shopping Center, or are to open concurrently with Tenant, including at least two (2) or more of the following tenants: (i) J.C. Penney; (ii) Bass Pro; (iii) a cinema.
>
> Should the Opening Co-Tenancy Condition not be satisfied, Tenant may either (i) delay opening for business until the Opening Co-Tenancy Condition is satisfied . . . or (ii) open for business and, if the Opening Co-Tenancy Condition remains unsatisfied on the Rent Commencement Date, then beginning on the Rent Commencement Date, pay fifty percent (50%) of the monthly Rent (and any additional other costs without reduction) payable pursuant to the terms of this Lease until such time as the Opening Co-Tenancy Condition has been satisfied.

(Id. ¶ 10.)

A proposed site plan ("Site Plan") for the Promenade was attached to the lease as Exhibit B.  (Id. ¶¶ 8, 13(c), Ex. B.)  The Site Plan shows plaintiff's location in relation to other proposed buildings in the Promenade, details the square footage of each building, and the space allocated for parking.  (Id. ¶ 9, Ex. B.)  The Site Plan also includes a table that summarizes the amount of space allocated for different uses of buildings in the Promenade, such as the amount of space for small shops, a health club, a cinema, large shops, and restaurants.  (Id.)  This table lists the "total gross leasable area" as 743,908 square feet.  (Id. ¶ 13(c).)

Plaintiff opted to open its store at the Promenade concurrently with J.C. Penny, Bass Pro, and the cinema.  At the

time plaintiff opened its store, 320,000 square feet of the Promenade was allegedly open and operating. (Id. ¶ 13(e).) Plaintiff began making monthly rent payments to defendant for fifty percent of the amount of agreed upon rent, contending that defendant had failed to meet the Co-Tenancy Condition in the lease because less than sixty percent of the gross leasable area was open and operating. (Id. ¶ 15.) Defendant threatened to evict plaintiff and demanded plaintiff pay one-hundred percent of the monthly rent. (Id. ¶ 16.) Defendant argued that the Co-Tenancy Condition was satisfied because buildings not fully constructed are not included in the "Shopping Center" for purposes of the condition, and that more than sixty percent of buildings that had been fully constructed were open and operating at the time plaintiff opened for business. (Id. ¶ 17.) Plaintiff subsequently paid the amount of rent demanded by defendant under protest. (Id. ¶ 18.)

On February 12, 2010, plaintiff filed this action against defendant, containing causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and requesting a declaration of its rights and obligations under the lease. (Docket No. 1.) On March 12, 2010, defendant filed a Rule 12(b)(6) motion to dismiss the Complaint for failure to state a claim on which relief can be granted.

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

In general a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

Defendant filed a request for judicial notice that requests the court take notice of four documents: (1) a copy of the lease between plaintiff and defendant; (2) a definition of "gross leasable area" from the International Council of Shopping Centers's ("ICSC") Dictionary of Shopping Center Terms; (3) a computer printout of the "About ICSC" page from the ICSC website; and (4) a computer printout from the ICSC website showing that plaintiff is a member.  (Docket No. 9.)  The court will take

4

1 notice of the lease because "documents whose contents are alleged
2 in a complaint and whose authenticity no party questions, but
3 which are not physically attached to the pleading, may be
4 considered in ruling on a Rule 12(b)(6) motion to dismiss."
5 <u>Fecht v. The Price Co.</u>, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995);
6 <u>see</u> <u>In re Stac Elec. Sec. Litig.</u>, 89 F.3d 1399, 1405 n.4.  The
7 court declines to take notice of defendants' remaining three
8 exhibits because they do not satisfy Federal Rule of Evidence
9 201(b).[1]

   A.   <u>Declaratory Relief and Breach of Contract Claims</u>

The parties' dispute on plaintiff's first four causes of action for declaratory relief, money paid, money had and received, and breach of contract focuses on their differing interpretations of the phrase "gross leaseable area of the Shopping Center" in the lease's Co-Tenancy Condition.  The Co-Tenancy Condition in Article 8 of the lease is satisfied and plaintiff must pay monthly full rent if, "as of the Commencement Date . . . sixty percent (60%) (not including Best Buy) of the gross leasable area of the Shopping Center are open and operating at the Shopping Center . . . ."  (Def.'s Req. Judicial Notice Ex. A. at 12.)  Interpretation of the lease therefore turns on interpretation of the terms "gross leasable area" and "Shopping Center.

---

[1] Plaintiff filed a "Conditional Request for Judicial Notice" which requested that the court take notice of additional documents from the ICSC in the event it granted defendants' request for judicial notice of the ICSC documents.  (Docket No. 11.)  Since the court will not take notice of defendant's ICSC documents, it will also not take judicial notice of the documents submitted by plaintiff.

5

1. "Gross Leasable Area"

Under plaintiff's interpretation, the "gross leasable area" of the Shopping Center could be interpreted to refer to the amount of leasable area included in the Site Plan. The Site Plan in Exhibit B contains a table entitled "Area Summary" that lists the "total gross leasable area" of the Promenade as 743,908 square feet. (Id. at Ex. B.) The Site Plan was explicitly incorporated into the lease. (Id. at 3.) It is therefore plausible that the gross leasable area of the Shopping Center was meant to be defined as a static number based on the amount of leasable area available in the proposed buildings in the Site Plan. In fact, Exhibit B is the only location outside of the Co-Tenancy Condition in Article 8 that uses the term "gross leasable area."

Under the interpretation urged by defendant, however, "gross leasable area" could refer to a number that can only be calculated after a building is constructed. Article 7 of the lease supports that "leasable area" refers only to constructed space. Article 7 provides that:

> For the purpose of this lease, the leasable area of the Premises shall be measured from the center of all common walls and the outside of all exterior walls of the Premises . . . If the actual number of leasable area in the Premises varies from the number of square feet set forth in Article 1 . . . the parties will execute an Amendment to this Lease: (i) to state the actual number of leasable area in the Premises . . . and (ii) to decrease the Rent . . . to reflect the actual number of leasable square feet in the Premises.

(Compl. ¶ 8.) Article 7 could therefore demonstrate that the measurement of leasable area can only occur after a building is constructed. However, the explanation of how to measure leasable

6

area in Article 7 does not definitively prove that defendant's interpretation is correct.  Article 7 only refers to "the Premises"--plaintiff's individual space in the Shopping Center--and provides that plaintiff's rent shall be lowered if the "actual leasable area" of the premises is different from the leasable area enumerated in Article 1 of the lease.  There would likely only be a need for such an adjustment if the lease were based on planned square footage in Article 1, rather than to-be-determined post construction square footage, as defendant argues.  The court cannot say at this stage of the proceeding that plaintiff's interpretation of the phrase "gross leasable area," as opposed to defendant's, is entirely implausible.

        2.   <u>"Shopping Center"</u>

Both parties look to Article 1 of the lease to define the term "Shopping Center."  Article 1 states:

> The premises and improvements and appurtenances constructed and to be constructed thereto (the "Premises") located at the SE corner of State Highway Route #120 and South Union, in Manteca, California (the "Shopping Center").  The legal description of the Shopping Center is attached hereto as <u>Exhibit A</u> and made a part hereof, and the Shopping Center is outlined in red on the site plan attached hereto as <u>Exhibit B</u> and made a part hereof . . . Nothing contained in this Lease will prohibit Landlord from constructing the Shopping Center at various times, and in various phases or sections . . . .  The buildings located within phases or sections constructed after the date of execution of this Lease will be deemed to be included within the defined Shopping Center for all purposes of this Lease as of the date that the buildings are fully constructed . . . .

(<u>Id.</u> at 3.)

The definition of "Shopping Center" is open to two reasonable interpretations because of the inconsistent use of "Shopping Center" in Article 1.  On one hand, as argued by

7

plaintiff, the Shopping Center may be defined as those buildings outlined in the Site Plan.  Article 1 first uses the term "Shopping Center" in reference to "the SE corner of State Highway Route # 120 and South Union, in Manteca, California (the 'Shopping Center')."  (Id.)  Article 1 further notes that "the Shopping Center is outlined in red on the site plan attached hereto as Exhibit B."  (Id.)  This phrase could be read to define the Shopping Center solely according to the proposed Site Plan.

On the other hand, as defendant contends, "Shopping Center" might only refer to those buildings already constructed for purposes of the Co-Tenancy Condition.  Under this interpretation, Exhibit B could be read to simply provide the "legal description" of the real property of the Promenade, not a definition of Shopping Center for purposes of the lease.  Article 1 states that "[t]he legal description of the Shopping Center is attached hereto as Exhibit A . . . and the Shopping Center is outlined in red on the site plan attached hereto as Exhibit B . . . in the event of any conflict between Exhibit A and Exhibit B, Exhibit B shall control."  (Id.)  This language could be read to provide that if Exhibit B, which also identifies the physical location of the land bounded by four roads, conflicts with the metes and bounds description in Exhibit A, Exhibit B controls for purposes of establishing the legal definition of the Shopping Center.  In that case, the only definition of Shopping Center "for purposes of [the] Lease" would be "[t]he buildings . . . constructed after the execution of [the] Lease . . . as of the date that the buildings are fully constructed."  Again, the court cannot say at this stage of the proceeding that the

8

interpretation of the term "Shopping Center" urged by plaintiff, as opposed to that urged by defendant, is entirely implausible.

Under California law, the court must consider relevant extrinsic evidence that can prove a meaning to which the contract is reasonably susceptible to determine the intent of the parties. U.S. v. King Features Entm't, Inc., 843 F.2d 394, 398 (9th Cir. 1988); A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Div., 852 F.2d 493, 497 n.2 (9th Cir. 1988); see also Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc., 971 F.2d 272, 277 (9th Cir. 1992); Trident Ctr. v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 568-69 (9th Cir. 1988); Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968). Because plaintiff has alleged a reasonable interpretation of the contract and plead that defendants breached its terms, the court cannot grant defendant's motion to dismiss when no evidence evincing the intent of the parties is before it.

    B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)). "A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005) (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

1  Plaintiff alleges that defendant breached the covenant of good
2  faith and fair dealing by "failing or refusing to construct, or
3  to fully construct, the buildings that it represented would be
4  constructed, upon the timeline stated for their construction."
5  (Compl. ¶ 35.)

6         Although the lease does provide defendant with the
7  discretion to construct the Shopping Center "at various times,
8  and in various phases or sections," this does not preclude
9  plaintiff from pleading a claim for breach of the implied
10 covenant of good faith and fair dealing.  In fact, "[t]he
11 covenant of good faith finds particular application where one
12 party is invested with a discretionary power affecting the rights
13 of another.  Such power must be exercised in good faith."  Carma
14 Developers, 2 Cal. 4th at 372.  Plaintiff has alleged that
15 defendant acted in bad faith by refusing to construct various
16 buildings in the Promenade and slowing the pace of construction
17 despite its promises to the contrary.  This may have frustrated
18 plaintiff's ability to realize the economic benefits from leasing
19 space in the Promenade if defendant dragged its feet in
20 constructing the buildings in bad faith.  Taking plaintiff's
21 allegations as true, the Complaint states a claim for breach of
22 the implied covenant of good faith and fair dealing.

23         IT IS THEREFORE ORDERED that defendant's motion to
24 dismiss be, and the same hereby is, DENIED.

25 DATED:  May 12, 2010

                          _____
                          WILLIAM B. SHUBB
                          UNITED STATES DISTRICT JUDGE