1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BEST BUY STORES, L.P., a Virginia
     limited partnership,
12
                      Plaintiff,              No. 2:10-cv-0389-WBS-KJN
13
              vs.
14
     MANTECA LIFESTYLE CENTER, LLC,
15   a Delaware limited liability company,

16                    Defendant.              ORDER

17   _____/

18              Currently pending before the court is plaintiff's Motion to Compel Defendant/

19   Counterclaimant's Production of Documents (the "Motion").[1]  (Motion, Dkt. No. 41.)  The

20   parties timely filed a joint statement regarding their discovery disagreement (the "Joint

21   Statement").  (Joint Statement, Dkt. No. 47.)  The matter came on for hearing on the court's law

22   and motion calendar on June 9, 2011.  Attorney Amy Churan attended telephonically on behalf of

23   the plaintiff.  Attorney Howard Jeruchimowitz attended telephonically on behalf of the

24   defendant.  The undersigned has considered the briefs, oral arguments, and the appropriate

25   portions of the record in this case and, for the reasons that follow, orders that plaintiff's motion is

26

     _____

          [1]   This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

1  granted in part and denied in part.[2]

2  I.      BACKGROUND

3          On February 12, 2010, plaintiff Best Buy Stores, L.P. (the "plaintiff" or "Best

4  Buy"), filed this action against defendant Manteca Lifestyle Center, LLC (the "defendant" or

5  "Manteca"). (Dkt. No. 1.) The complaint contained causes of action for breach of contract and

6  breach of the implied covenant of good faith and fair dealing, and requesting a declaration of its

7  rights and obligations under the lease. (Dkt. No. 1.) On March 12, 2010, defendant filed a Rule

8  12(b)(6) motion to dismiss the complaint for failure to state a claim on which relief can be

9  granted, which was denied. (Dkt. No. 17.) Defendant filed cross-claims against plaintiff,

10 including claims for breach of contract, breach of the implied covenant of good faith, and

11 declaratory relief. (Dkt. No. 21.) On May 18, 2011, plaintiff subsequently filed a First Amended

12 Complaint (the "FAC"), the operative pleading, to add a claim for declaratory relief. (FAC, Dkt.

13 No. 44.)

14         This action arises from a written lease (the "Lease") whereby defendant agreed to

15 lease plaintiff 30,038 square feet of space at a retail development known as the Promenade Shops

16 at Orchard Valley (the "Promenade") in Manteca, California. (FAC ¶¶ 1, 8.) Article 8 of the

17 Lease contains an "Opening Co-Tenancy" provision, which was subsequently modified by

18 amendment of the parties on January 19, 2009. (Id. ¶¶ 8, 10.) The amended version of the

19 provision states:

20             As used herein, the "Opening Co-Tenancy Condition" shall
              mean that, as of the Commencement Date, Tenant shall not
21            be required to open for business unless sixty percent
              (60%) (not including Best Buy) of the gross leasable area
22            of the Shopping Center are open and operating at the
              Shopping Center, or are to open concurrently with Tenant,
23            including at least two (2) or more of the following
              tenants: (i) J.C. Penney; (ii) Bass Pro; (iii) a cinema.

24

25         [2] In the future, when practicable, the parties may also contact Judge Newman's
   courtroom deputy at (916) 930-4187 to schedule a telephonic conference with the Judge in efforts
26 to resolve discovery disputes prior to filing written discovery motions.

> Should the Opening Co-Tenancy Condition not be satisfied,
> Tenant may either (i) delay opening for business until
> the Opening Co-Tenancy Condition is satisfied . . . or
> (ii) open for business and, if the Opening Co-Tenancy
> Condition remains unsatisfied on the Rent Commencement
> Date, then beginning on the Rent Commencement Date, pay
> fifty percent (50%) of the monthly Rent (and any
> additional other costs without reduction) payable
> pursuant to the terms of this Lease until such time as
> the Opening Co-Tenancy Condition has been satisfied.

(Id. ¶¶ 10, 12.)  A proposed site plan ("Site Plan") for the Promenade was attached to the lease as Exhibit B.  (Id. ¶¶ 8, 13(c).)  The Site Plan includes a table that summarizes the amount of space allocated for different uses of buildings in the Promenade, such as the amount of space for small shops, a health club, a cinema, large shops, and restaurants.  (Id. ¶ 13(c).) This table lists the "total gross leasable area" as 743,908 square feet.  (Id.)  Plaintiff alleges that it opted to open its store at the Promenade concurrently with J.C. Penny, Bass Pro, and the cinema.  Plaintiff alleges that at the time it opened its store, 320,000 square feet of the Promenade were open and operating.  (Id. ¶ 13(d).)

The parties' dispute centers on interpretation of the Co-Tenancy Condition and the condition of the Promenade at the time plaintiff opened for business.  Plaintiff began making monthly rent payments to defendant for fifty percent of the amount of agreed-upon rent, contending that defendant had failed to meet the Co-Tenancy Condition in the lease because less than sixty percent of the gross leasable area was open and operating.  (Id. ¶ 15.)  Defendant threatened to evict plaintiff and demanded plaintiff pay one-hundred percent of the monthly rent.  (Id. ¶ 16.)  Defendant argues that the Co-Tenancy Condition was satisfied because buildings not "fully constructed" are not included in the "Shopping Center" for purposes of the condition, and that more than sixty percent of buildings that had been fully constructed were open and operating at the time plaintiff opened for business.  (Id. ¶ 17.)  Plaintiff subsequently paid the amount of rent demanded by defendant under protest.  (Id. ¶ 18.)  Both parties allege breaches of the Lease and, among other claims, seek declaratory relief.

II.    LEGAL STANDARDS

      1.    Waiver of Privilege

      Rule 34(b)(2) requires a party to respond to a request for production within 30 days, and the response must "either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Rule 34(b)(2)(A) requires that a written response to a discovery request be served within 30 days of the service of the request.  Rule 34 provides that, when objecting to a request to produce documents, the responding party's objection "must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).

      Rule 26(b)(5)(A) provides that, when claiming a privilege, a party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or other tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the other party to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).

      The Ninth Circuit Court of Appeals has analyzed Rule 26(b)(5)'s notice requirement and how it relates to Rule 34's 30-day deadline.  Burlington Northern & Santa Fe Ry. Co. v. United States, 408 F.3d 1142, 1149 (9th Cir. 2005).  The Court of Appeals has held that inserting "boilerplate" privilege objections into responses to a Rule 34 request for production is insufficient.  Id.  With respect to asserting privilege objections within the 30-day period envisioned by Rule 34, however, the Court of Appeals also rejected a *per se* waiver rule that would deem a privilege to be automatically waived if not asserted within Rule 34's 30-day period.  Id.; accord Coalition for a Sustainable Delta, 2009 WL 3378974, at *3 ("The Ninth Circuit rejected a per se rule that 'failure to produce a privilege log in a timely manner triggers a waiver of privilege,' noting that Rule 26's requirement for proper assertion of a privilege does not correlate with Rule 34's 30-day deadline for serving written responses to discovery requests, 'nor does it explicitly articulate a waiver rule.'") (citing Burlington Northern); Jumping Turtle

1   Bar and Grill v. City of San Marcos, No. 10-CV-270-IEG BGS, 2010 WL 4687805, at *2 (S.D.

2   Cal. Nov 10, 2010) (unpublished) ("The Burlington court held that boilerplate objections in

3   initial responses fail to adequately assert the privilege and that a later-produced privilege log

4   could sufficiently assert privileges for the first time. Therefore, the City's failure to assert

5   inadequate boilerplate assertions within Rule 34's 30 day time period can not operate as a per se

6   waiver of the privilege and the Court will apply the Burlington factors in order to determine the

7   issue of waiver.").  The court in Burlington Northern clarified that while "boilerplate" privilege

8   objections made within the 30-day time limit are insufficient, detailed objections within a

9   privilege log provided outside the 30-day time limit *may* be sufficient, depending on various

10  factors weighed as part of a "holistic" case-by-case analysis.  Burlington Northern, 408 F.3d at

11  1149-50.

12       Using the 30–day period as a "default guideline," the Burlington Northern court

13  directed district courts to make "a case-by-case determination" of whether a privilege objection

14  was sufficiently raised.  Id.  This determination should take several factors into account.  Id.

15  First, the degree to which the objection or assertion of privilege enables the litigant seeking

16  discovery and the court to evaluate whether each of the withheld documents is privileged (where

17  providing particulars typically contained in a privilege log is presumptively sufficient and

18  boilerplate objections are presumptively insufficient).  Id.  Second, the timeliness of the objection

19  and accompanying information about the withheld documents (where service within 30 days, as a

20  default guideline, is sufficient).  Id.  Third, the magnitude of the document production and other

21  particular circumstances of the litigation that make responding to discovery unusually easy (such

22  as the fact that many of the same documents were the subject of discovery in an earlier action) or

23  unusually hard.  Id.  These factors "should be applied in the context of a holistic reasonableness

24  analysis, intended to forestall needless waste of time and resources, as well as tactical

25  manipulation of the rules and the discovery process."  Id.  Likewise, "[t]hey should not be

26  applied as a mechanistic determination of whether the information is provided in a particular

1   format." Id.  The application of these factors shall also be subject to "agreements or stipulations

2   among the litigants" and discovery or protective orders.  Id.[3]

3                    2.        Compelling Responses to Discovery Requests

4              A motion to compel is appropriate when a party fails to produce relevant,

5   non-privileged documents requested pursuant to Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(4).

6   The party seeking to compel discovery has the burden of establishing that its request satisfies the

7   relevancy requirements of Rule 26(b)(1).  Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D.

8   Cal. 1995) (holding that a relevant matter is "any matter that bears on, or that reasonably could

9   lead to other matters that could bear on, any issue that is or may be in the case." )[4]  The scope of

10  discovery under Fed. R. Civ. P. 26(b)(1) is broad.  Discovery may be obtained as to any

11  unprivileged matter "relevant to the claim or defense of any party...."  Id.  Discovery may be

12  sought of relevant information not admissible at trial "if the discovery appears reasonably

13  calculated to lead to the discovery of admissible evidence."  Id.  The broad scope of permissible

14  discovery encompasses any matter that bears on, or that reasonably could lead to other matters

15  that could bear on, any issue that is or may be in the case.  Oppenheimer Fund, Inc. v. Sanders,

16  437 U.S. 340, 351 (1978).  Discovery is not limited to the merits of a case, "for a variety of

17

18        [3] "[W]e are aware (and take this opportunity to make district courts aware) that litigants
    seeking discovery may attempt to abuse the rule we announce today by propounding exhaustive
19  and simultaneous discovery requests. In these circumstances, litigants are not without recourse.
    Rather, at the outset of discovery or, at the latest, before Rule 34's 30–day time limit has expired,
20  they may either secure an appropriate agreement or stipulation from the relevant litigants or,
    failing that, apply for a discovery or protective order." Burlington Northern, 408 F.3d at 1149
21  n.3.

22        [4] "Relevant to the subject matter" is interpreted broadly, and includes information that
    might reasonably assist a party in evaluating the case, preparing for trial, or facilitating
23  settlement.  Hickman v. Taylor, 329 U.S. 495, 506-07 (1947).  Even if it would not be admissible
    at trial, relevant information may be discoverable if it "appears reasonably calculated to lead to
24  the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1); Hickman, 329 U.S. at 507.
    Hearsay or nonhearsay information relating to the credibility of witnesses or other evidence in the
25  case may be relevant to the subject matter of the action.  Oakes v. Halvorsen Marine Ltd., 179
    F.R.D. 281, 284 (C.D. Cal. 1998); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 603-04
26  (C.D. Cal. 1995).

fact-oriented issues may arise during litigation that are not related to the merits." Id.  A district court has wide latitude in controlling discovery, and its rulings will not be overturned in the absence of a clear abuse of discretion.  Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416-17 (9th Cir. 1987).

The court, however, may limit discovery if it ". . . is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had ample opportunity by discovery . . . to obtain the information sought"; or if the proposed discovery is overly burdensome.  Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

After the moving party makes the requisite showing of relevance, the party opposing the discovery has the burden of showing that it should be prohibited, as well as the burden of clarifying, explaining, and supporting its objections.  DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).  As to requests for production of documents, Federal Rule of Civil Procedure 34(b)(2)(c) provides that "[a]n objection to part of a request must specify the part and permit inspection of the rest."  Each party generally has the right to discover "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).

If a motion to compel is granted, unless certain exceptions are present, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  However, the court "must not order this payment if . . . (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Id.  If the motion to compel is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the

1    reasonable expenses for the motion.  Fed. R. Civ. P. 37(a)(5)(C).

2    III.    DISCUSSION

3            1.    Waiver of Privilege

4            Defendant failed to specifically assert "privilege" objections in response to three

5    of plaintiff's Requests for Production of Documents ("RFPs").  (Joint Statement at 12; Dkt. No.

6    47-1(Declaration of Amy Churan ("Churan Decl.") at ¶ 6); Exh. E to Churan Decl. at pp. 10-11.)

7    While defendant raised privilege objections in response to other RFPs, it did not specifically raise

8    such objections in response to RFP Nos. 18-20.  Defendant notes that its responses to all RFPs

9    were preceded by standard "boilerplate" objections, which included "privilege" objections.

10   (Joint Statement at 12.)  Defendant also claims that, because it objected to these requests on

11   grounds that they were "redundant of Request for Production #4 and others above" (id.), and

12   because defendant's responses to "Request for Production #4" included a privilege objection, that

13   objection was incorporated into the responses to RFP Nos. 18-20.  (Joint Statement at 12-13.)

14   During the meet and confer process, defendant's correspondence to plaintiff confirmed that

15   defendant intended to object to RFP Nos. 18-20 only insofar as those requests encompassed

16   privileged documents.  (Joint Statement at 15; Dkt. No. 47-1 ¶ 9; Exh. G to Churan Decl.

17   (defendant's letter dated Feb. 3, 2011, stating that all "non-privileged" versions of documents

18   responsive to RFP Nos. 18-20 would be produced).)

19           Plaintiff now contends that defendant's failure to include privilege objections

20   within its initial non-boilerplate responses to RFP Nos. 18-20 necessarily means that defendant

21   has waived such objections, and that defendant is now obligated to produce all privileged and

22   non-privileged documents responsive to RFP Nos. 18-20.  (Joint Statement at 9-11).  Plaintiff

23   argues that "[P]ursuant to Federal Rule of Civil Procedure 34, a party must respond in writing

24   within 30 days after being served requests for the production of documents.  Fed. R. Civ. P.

25   34(b)(2)(A).  Manteca's privilege objections as to these requests were first asserted more than 30

26   days after the requests were served.  Thus, the objections are waived."  (Joint Statement at 10.)

1          a.    Burlington Northern

2          Plaintiff correctly cites the Burlington Northern case in support of its argument

3  that "general boilerplate objections" are insufficient.  (Id. (citing Burlington Northern, 408 F.3d

4  at 1149-50.))  But plaintiff's reading of Burlington Northern is only partially accurate.  While

5  Burlington Northern confirms that "boilerplate" privilege objections are insufficient, that same

6  decision also clarifies that a respondent's failure to raise the privilege objections within the 30-

7  day limit for responses to RFPs does *not* necessarily amount to a waiver of the privilege.

8  Burlington Northern, 408 F.3d at 1149-50.  Indeed, in Burlington Northern, even though

9  insufficient "boilerplate" privilege objections were raised within responses to RFPs, those

10  objections were not deemed automatically waived.  Id.  Instead, the court analyzed the

11  responding party's privilege log, which was provided five months after the deadline for

12  responding to the RFPs.  Id.  The late-produced privilege log was held to be an insufficient

13  "privilege" objection given the litigant's sophistication and its relative ability to produce a log

14  sooner.  Id.[5]

15          Accordingly, plaintiff's argument that defendant automatically waived its

16  privilege objections in connection with RFP Nos. 18-20 simply because those privilege

17  objections were raised outside defendant's initial responses to RFPs is not well-taken.

18  Plaintiff's over-simplified position — that defendant's failure to assert privilege objections

19  within its responses to RFP Nos. 18-20 means the privilege was automatically waived — is not

20  supported by the authorities plaintiff cites.  (Joint Statement at 10-11.)

21          The Burlington Northern case that plaintiff relies upon actually stands for the

22  opposite proposition.  Burlington Northern, 408 F.3d at 1149-50 (holding that, depending on the

23
──────────────────────
24          [5]  The Court of Appeals upheld the district court's finding of waiver, but emphasized that
(a) it was reviewing for "clear error as a matter of law;" (b) the first privilege log arrived 5
months late; (c) the party asserting privilege was "a sophisticated corporate litigant;" (d) a timely
25  log would not have been burdensome; and (e) "the untimely logs failed to correlate specified
documents with specific discovery requests."  Burlington Northern, 408 F.3d at 1149-50 (internal
26  quotations omitted).

1  specific context of the case, a party might be able to raise sufficient privilege objections in a

2  privilege log even after having asserted only ineffectual "boilerplate" privilege objections in

3  initial responses to RFPs.)  Whether a privilege objection is sufficient depends on the application

4  of various factors[6], including (but not limited to) the "timeliness of the objection."  Id.

5          While the court in Burlington Northern found that the privilege had been waived,

6  that finding turned upon the litigant's sophistication and the fact that the litigant had raised the

7  objection in a privilege log produced "five months" after the RFP responses were due.  Id.  It did

8  not turn solely upon the responding party's failure to raise non-boilerplate privilege objections

9  within the 30-day time period for responding to RFPs under Federal Rule 34.  Id.  Indeed, the

10  court in Burlington Northern explicitly stated that such a failure would *not* necessarily amount to

11  an automatic waiver of privilege.  Id. ("[W]e also reject a per se waiver rule that deems a

12  privilege waived if a privilege log is not produced within Rule 34's 30–day time limit.")

13          Moreover, district courts applying Burlington Northern have declined to find a

14  waiver of privilege in cases where a party first raised insufficient "boilerplate" privilege

15  objections in its RFP responses but subsequently raised privilege objections within a detailed

16  privilege log provided after the 30-day time period.  E.g., Coalition for a Sustainable Delta v.

17  Koch, No. 1:08-CV-00397 OWW GSA, 2009 WL 3378974, at *11-14 (E.D. Cal. Oct. 15, 2009)

18  (unpublished) (in a case dealing with a universe of 80,000 documents and thousands of emails,

19  defendants' assertion of privilege two months after the production of documents was reasonable);

20  Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, No. CIV 07CV-0894DMS POR, 2009 WL

21

22          [6]  As described above, these "factors" are: (1) the degree to which the objection or
assertion of privilege enables the litigant seeking discovery and the court to evaluate whether
each of the withheld documents is privileged (where providing particulars typically contained in

23  a privilege log is presumptively sufficient and boilerplate objections are presumptively
insufficient); (2) the timeliness of the objection and accompanying information about the

24  withheld documents (where service within 30 days, as a default guideline, is sufficient); (3) the
magnitude of the document production and; (4) other particular circumstances of the litigation

25  that make responding to discovery unusually easy (such as the fact that many of the same
documents were the subject of discovery in an earlier action) or unusually hard.  Burlington

26  Northern, 408 F.3d at 1149-50.

1   4642388, at *3-4 (S.D. Cal. Dec. 1, 2009) (unpublished) (despite a nine-month delay in

2   production of privilege log, privilege objection held not to be waived).

3          Here, defendant's "boilerplate" privilege objections in its original responses were

4   insufficient.  See Burlington Northern, 408 F.3d at 1149-50.  Nonetheless, in the context of this

5   case and the requisite "holistic" analysis Burlington Northern requires, plaintiff has not

6   convincingly shown that defendant has waived the privilege as to documents responsive to RFP

7   Nos. 18-20.  As an initial matter, plaintiff has not attempted to make the requisite showing under

8   the various "factors" described in Burlington Northern.  Plaintiff's decision to ignore the

9   requisite analysis of these factors is surprising given that defendant has specifically directed

10  plaintiff to them.  (Joint Statement at 13-15.)  Defendant's portions of the Joint Statement also

11  put plaintiff on notice that Burlington Northern does not support the proposition that a party's

12  failure to raise privilege objections within responses to RFPs means the objections are

13  automatically waived.  The court is baffled by plaintiff's decision to ignore the Burlington

14  Northern factors and to ignore defendant's challenges to plaintiff's interpretation of that case.  To

15  say the least, plaintiff's failure to address the Burlington Northern factors weighs against a

16  finding that defendant has waived its privilege objections with respect to RFP Nos. 18-20.

17          b.      Privilege Logs

18          The court has attempted to proceed to an analysis of the Burlington Northern

19  factors despite plaintiff's decision to ignore them.[7]  While the precise nature of the stipulation is

20  unclear, the parties have apparently stipulated to exchange privilege logs at some point in the

21  future.  Such stipulation is central to an analysis of the Burlington Northern factors.  Under

22  Burlington Northern, depending on the context of the case, a party may raise a sufficient

23

24          [7]  Burlington Northern requires examination of "the degree to which the objection or
    assertion of privilege enables . . . [an] evaluat[ion] [of] whether each of the withheld documents
    is privileged (where providing particulars typically contained in a privilege log is presumptively
25  sufficient . . .)" and "the timeliness of the objection," it would be premature to deem a privilege
    waived based on defendant's failure to provide a privilege log to date.  Burlington Northern, 408
26  F.3d at 1149-50.

1    privilege objection for the first time *within a privilege log* provided after the 30-day period to

2    respond to RFPs.  Burlington Northern, 408 F.3d at 1149-50.

3              Defendant's counsel represents that "[b]ased on the rolling production, it was

4    understood that the parties are in the process of putting together the privilege log[s] and

5    exchanging the privilege logs at the end of production."  (Dkt. No. 48 (Declaration of Howard

6    Jeruchimowitz ("Jeruchimowitz Decl.") at ¶ 9), Exh. 2 to Jeruchimowitz Decl.)  In the parties'

7    Joint Statement, defendant also repeatedly mentions the parties' apparent stipulation regarding a

8    delayed exchange of privilege logs.  (Joint Statement at 15 (". . . both Manteca and Best Buy

9    have not yet produced privilege logs and are in the process of exchanging them now that the

10   rolling production is almost done"); 15 n.4 ("As far back as December 10, 2010, Best Buy

11   produced documents . . . and in the letter to Manteca's counsel stated that a privilege log

12   covering all production would be forthcoming.  To date a privilege log has not been provided by

13   Best Buy"); 16 (" . . . both sides have not yet produced a privilege log in this case and, as stated

14   above, are in the process of doing so now that the rolling production is being completed this

15   month so that the log contains all privileged documents" [. . .] "both parties are producing

16   privilege logs now at the end of the rolling production . . .").)

17             Within the Joint Statement, plaintiff does not address or refute defendant's

18   representation regarding a stipulation governing the timing of an exchange of privilege logs.

19   (E.g., Joint Statement at 9-10; Churan Decl. at ¶¶ 1-13.)  During the hearing, plaintiff's counsel

20   confirmed that while no "formal" agreement exists regarding the exchange of privilege logs, the

21   parties do have an understanding that such logs will be exchanged as soon as practicable.

22             Because the parties' understanding regarding their exchange of privilege logs

23   directly impacts analyses of both the "timeliness" of defendant's objections and "particulars" of

24   the objections, a meaningful application of the first two Burlington Northern factors cannot yet

25   be done.  As stated above, using the 30–day period as a "default guideline," a district court must

26   make a "case-by-case determination" of whether a privilege objection was sufficiently raised.

1   Burlington Northern, 408 F.3d at 1149-50.  This determination requires the district court to take

2   several factors into account, including "the degree to which the objection or assertion of privilege

3   enables the litigant seeking discovery and the court to evaluate whether each of the withheld

4   documents is privileged (where providing particulars typically contained in a privilege log is

5   presumptively sufficient and boilerplate objections are presumptively insufficient)" and "the

6   timeliness of the objection and accompanying information about the withheld documents (where

7   service within 30 days, as a default guideline, is sufficient) . . . ."  Id.  The application of these

8   factors shall also be subject to "*agreements or stipulations among the litigants*" and discovery or

9   protective orders.  Id. at 1149 n.3 (emphasis added).

10          Burlington Northern mandates a case-by-case analysis that turns on the timing and

11  detail of privileges objections that *may* be made for the first time within a privilege log, and

12  when district courts apply the Burlington Northern factors, the timing of privilege log production

13  is typically a significant part of the analysis.  E.g., Jumping Turtle Bar and Grill, 2010 WL

14  4687805 at *2 (holding that, ". . . under the circumstances of this case, the production of a

15  privilege log one and one half months late was not unreasonable."); Coalition for a Sustainable

16  Delta, 2009 WL 3378974 at *11-14 (holding that a party's producing a privilege log two months

17  after production of documents and seven months after the initial RFPs were propounded was

18  nonetheless reasonable in the context of the case); Carl Zeiss Vision Int'l GmbH, 2009 WL

19  4642388 at *3-4 (holding that, despite a nine month delay in production of privilege log, the

20  privilege was not waived); Bess v. Cate, No. 2:07-cv-1989 JAM JFM, 2008 WL 5100203, at *2

21  (E.D. Cal. Nov. 26, 2008) (unpublished) (finding waiver because a party's "failure" to provide

22  any privilege log waives the privilege); Burch v. Regents of the University of California, No.

23  CIV. S-04-0038 WBS GGH, 2005 WL 6377313, at *1-2 (E.D. Cal. Aug. 30, 2005) (unpublished)

24  (holding that privilege objections raised in a privilege log will only be sufficient if the log is

25  "submitted in a timely manner" and with "supporting affidavits or other competent evidence to

26  prove the applicability of asserted privileges," and concluding that absent "mitigating

13

1  circumstances," a privilege log submitted "approximately six months after [p]laintiffs served

2  their first set of document requests" was insufficient to preserve the privilege).

3          Here, because the parties have agreed to exchange privilege logs sometime in the

4  future[8], the court declines to find that defendant's delayed production of a privilege log

5  necessarily amounts to a waiver of defendant's privileges in this particular case.  Given that the

6  delay in the production of defendant's privilege log is at least partially due to the parties'

7  stipulation, fairness requires that such delay not be construed against defendant or be deemed to

8  support a waiver of defendant's privileges.  See Jadwin v. County of Kern, No.

9  1:07-cv-0026-OWW-TAG, 2008 WL 2025093, at *3-4 (E.D. Cal. May 9, 2008) (unpublished)

10  (holding that, "[a]lthough the precise details of the agreement are difficult to divine," defendants

11  "proceeded in accordance with what Defendants' counsel believed was an agreement between

12  him and Plaintiff's counsel" defendant provided documents in two phases, with privilege logs

13  produced at the time of each production.  "Considering the timing dispute in the context of a

14  holistic reasonableness analysis . . . the date of service of the first privilege log and the fact that it

15  addressed only the first installment of documents, does not warrant a privilege waiver as to either

16  the items on the log or as to documents to be produced in the second installment.")

17          As in Jadwin, it appears that defendant has not actually failed or refused to timely

18  provide a privilege log.  See id.  Instead, defendant's delay in providing such log appears to be at

19  least the partial result of the parties' agreement regarding the timing of their privilege log

20  exchange.  Accordingly, plaintiff has not shown that, in the context of this particular case,

21  defendant's failure to provide a privilege log to date is sufficient to amount to a waiver of

22  defendant's privilege objections.  The parties' agreement has effectively delayed the requisite

23

_____

24      [8]   The parties' discovery cutoff is September 30, 2011.  (Dkt. No. 37 at 2.)  Whatever the details of the parties' understanding regarding the exchange of their privilege logs, there appears

25  to be at least some time left in the discovery period for the parties to exchange logs and resolve disputes arising therefrom.  Defendant should not view this order as insulating defendant from

26  potential future motions regarding the sufficiency of defendant's privilege log or the propriety of objections raised therein.

1   analysis, because the court cannot analyze the "timeliness" or "particulars" of privilege logs that

2   the parties have agreed to produce later.  Underscoring this point is the fact that the court in

3   <u>Burlington Northern</u> expressly deferred to "stipulations among the litigants" regarding the timing

4   of discovery.  <u>Burlington Northern</u>, 408 F.3d at 1149 n.3.

5           In sum, contrary to plaintiff's suggestion, <u>Burlington Northern</u> does not stand for

6   the proposition that a failure to raise privilege objections within RFP responses and within 30

7   days always amounts to an automatic waiver of privilege.  <u>See</u> <u>Burlington Northern</u>, 408 F.3d at

8   1149-50.  Plaintiff has not made the requisite showing of waiver under the proper <u>Burlington</u>

9   <u>Northern</u> factors.  In any event, at this time the court cannot meaningfully apply several of these

10  factors due to the parties' agreement regarding a delayed exchange of privilege logs.

11  Accordingly, plaintiff's motion to compel production of all documents responsive to RFP Nos.

12  18-20, *including* all privileged documents, is denied without prejudice.  On the present record,

13  the court declines to determine that a waiver has occurred.

14              2.      <u>Compelling Responses to Plaintiff's Discovery Requests</u>

15          Rule 34 governs requests for production of documents.  Fed. R. Civ. P. 34.  When

16  a party responds to a document request with objections, any "objection to part of a request must

17  specify the part *and permit inspection of the rest*."  Fed. R. Civ. P. 34(b)(2)(c) (emphasis added).

18  Therefore, where an objection applies to only a portion of the documents requested, the

19  responding party must produce the remainder of the documents.  <u>Id.</u>  Further, "[f]or *each item or*

20  *category*, the response must either state that inspection and related activities will be permitted as

21  requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B)

22  (emphasis added).  There is no "hard and fast rule" regarding the degree of particularity with

23  which documents must be described.  <u>Jensen v. Boston Ins. Co.</u>, 20 F.R.D. 619, 622 (N.D. Cal.

24  1957).

25              a.      <u>Correspondence Between Defendant and its Parent Company</u>

26          Defendant has characterized Poag & McEwen Lifestyle Centers ("Poag") as

15

1   defendant's "parent company." (Joint Statement at 5 n.2.) Plaintiff's RFP No. 33 seeks all

2   correspondence between Poag and defendant from 2005 to present, and the request was

3   significantly narrowed during the meet and confer process. (Joint Statement at 17.) As

4   narrowed, defendant has agreed to produce responsive documents, *except for* documents

5   "relating to the actual or planned tenant mix and tenant numbers." (Joint Statement at 17-18.)

6          Defendant's objections to production of documents fitting this narrowed

7   description are that: "(i) tenant mix type documents are irrelevant to the claims in this lawsuit;

8   (ii) the request is broad and Manteca is unclear what documents Best Buy seeks in response; and

9   (iii) Manteca produced documents with this information anyway so it is unclear what other

10  documents Best Buy still needs." (Joint Statement at 18.) Defendant's objections are not well-

11  taken.

12          (i)      Relevance

13         The party seeking to compel discovery has the burden of establishing that its

14  request satisfies the relevancy requirements of Rule 26(b)(1), and as to RFP No. 33 after the

15  above-described narrowing, plaintiff has met this burden. See Sanders, 437 U.S. at 351; Soto,

16  162 F.R.D. at 610 (holding that a relevant matter is "any matter that bears on, or that reasonably

17  could lead to other matters that could bear on, any issue that is or may be in the case.")

18         In this case, the parties dispute the interpretation of certain Lease terms, most

19  centrally the Opening Co-Tenancy provision. (E.g., FAC ¶ 12.) The dispute turns in part on a

20  determination of how much of the "gross leasable area" was occupied, and by which types of

21  tenants, at various points in time including Lease negotiation, signing, and performance. If either

22  of the parties' beliefs and intentions regarding any of these topics evolved, this evolution at least

23  "bears on" the dispute. See Sanders, 437 U.S. at 351; Soto, 162 F.R.D. at 610. Contrary to

24  defendant's argument, the parties' intentions regarding the Promenade's tenancy are potentially

25  relevant even though the Lease does not expressly "require" defendant "to have any certain type

26  of tenant." (Joint Statement at 18-19.) At minimum, the parties' changing intentions with

respect to composition of the tenancy at the Promenade might bear on interpretation of vague or

ambiguous terms in the Lease, such as the disputed definitions of terms within the Opening Co-

Tenancy Condition.  A party's potentially changing intentions and motivations regarding its

performance obligations under the Lease could also conceivably bear on the likelihood that any

given provision of the Lease was breached.  Accordingly, defendant's relevance objection is not

well-taken and the objection is overruled.

(ii)    <u>Overbreadth</u>

In the Joint Statement, plaintiff clarifies that RFP No. 33, as already narrowed

through the meet and confer process, may be further narrowed to seek defendant's "proposed and

actual tenant lists – whatever titled (ledger, list, roster, etc.)."  (Joint Statement at 18.)  While

defendant criticizes plaintiff's eleventh-hour clarification of what the RFP is intended to

encompass, with this clarification the RFP cannot be called overbroad.  RFP No. 33 requests all

correspondence between defendant and Poag that lists of all "proposed and actual tenant lists,

whatever titled," along with correspondence regarding "actual or planned tenant mix and tenant

numbers" (Joint Statement at 17-18), and as clarified this request is not overbroad.  The timing of

plaintiff's clarification, while not ideal, does not bear on whether the RFP itself is overbroad.

Accordingly, defendant's objection is overruled.

(iii)    <u>No Such Documents and Already-Produced Documents</u>

Defendant confusingly states that, "there are no communications between Poag"

and defendant that are responsive to the narrowed RFP No. 33, and then goes on to state that

defendant reaffirms and "stand[s] on" its relevance and overbreadth objections to the extent RFP

No. 33 seeks documents generally regarding "planned tenants and tenant mix."  (Joint Statement

at 18.)  Those objections are not well-taken for the reasons described above.

Further, defendant's claims that it "has already produced" some documents

responsive to this narrowed RFP are unhelpful.  (<u>Id.</u> at 19.)  Such a response does not clearly

state, for instance, either that no responsive documents exist or that all responsive documents

1  have been produced.  Fed. R. Civ. P. 34(b)(2)(B)-(C).  Defendant's reference to *some*

2  previously-produced documents (Joint Statement at 18-19 ("Manteca . . . has already produced

3  tenant ledgers, which include the actual tenants as well as proposed tenants. . . .")) is not a valid

4  objection.

5         Accordingly, plaintiff's motion to compel defendant to produce documents

6  responsive to RFP No. 33 is granted.  The request seeks relevant documents, and concerns about

7  its overbreadth have been satisfied by plaintiff's recent narrowing of the request. Subject to

8  whatever additional parameters have been already agreed-upon during the parties' meet and

9  confer process, the request has now been further narrowed to seek all correspondence between

10 defendant and Poag regarding "proposed and actual tenant lists — whatever titled (ledger, list,

11 roster, etc.) — during every stage of development and construction" and correspondence

12 regarding "actual or planned tenant mix and tenant numbers." (Joint Statement at 17-18.)

13 Defendant shall have 30 days from the date of this order to produce the responsive documents.

14              b.    Defendant's Operating Agreement and Documents Identifying
                      Defendant's Members and Managers
15

16        Plaintiff's RFP No. 36 seeks defendant's "Operating Agreement or limited

17 liability company agreement."  (Joint Statement at 19.)  Plaintiff's RFP Nos. 37-38 seek "ANY

18 DOCUMENTS IDENTIFYING" defendant's "managers" and "members" from 2005 to the

19 present, respectively, with further statutory definitions of those terms.  (Id.)

20              (i)    Privacy

21        Defendant's initial responses to RFP Nos. 36-38 included objections on the basis

22 of "Defendant's right to privacy."  (Joint Statement, 19-20.)  However, within the Joint

23 Statement defendant has not advanced any privacy arguments or otherwise bolstered its privacy

24 objections.  (Id.)  Because defendant has not asserted grounds for a "right to privacy" objection,

25 these objections are not well-taken.

26 ////

1              (ii)     Relevance

2              Defendant's initial responses to RFP Nos. 36-38 also included objections on

3    grounds of relevance.  (Joint Statement, 19-20.)  Defendant's relevance objections are not well-

4    taken.  This case concerns the interpretation and performance of various provisions within the

5    Lease, and these RFPs would reveal the identities of various individuals who may have played a

6    role in Lease negotiation, signing, authorization, and performance on defendant's behalf.  The

7    understandings of these individuals may bear on interpretation of any ambiguous Lease terms, as

8    well as on the performance of the agreement.  Accordingly, defendant's relevance objection is

9    not well-taken.

10             (iii)    Overbreadth

11             Defendant's initial responses to RFP Nos. 36-38 also included objections on

12   grounds of overbreadth.  (Joint Statement, 19-20.)  With respect to RFP No. 36 (requesting

13   defendant's "Operating Agreement" or "limited liability company agreement"), defendant's

14   overbreadth objection is not well-taken.  Whether the RFP seeks defendant's operating

15   agreement and/or limited liability company agreement, the request is narrow enough for

16   defendant to respond to it.  For instance, the request does not seek "all documents relating to"

17   either such agreement; as written, the request seeks only the agreement(s) themselves.

18   Accordingly, plaintiff's motion to compel documents responsive to RFP No. 36 is granted.

19   Defendant shall have 30 days from the date of this order to produce the responsive documents.

20             However, with respect to RFP Nos. 37-38 (requesting "any" documents

21   "identifying" defendant's managers and members), defendant's overbreadth objections are well-

22   taken.  While the identities of defendant's decision-makers with respect to the Lease are relevant

23   to this dispute, RFP Nos. 37-38 are overbroad as written.  It is conceivable that innumerable

24   pages of defendant's documents ranging from 2005 to the present fit the description of

25   "identify[ing]" defendant's managers and members.  Conceivably, every meeting minute, email

26   signature, business card, office map, and organizational chart, plus countless other documents

1  from 2005 to present would all appear to be responsive to the requests.

2         Accordingly, the court agrees with defendant that an interrogatory asking

3  defendant to provide a list of all its members and managers from 2005 to the present would be

4  more convenient and less burdensome for all parties.  Fed. R. Civ. P. 26(b)(2)(C)(i)(ii) and (iii).

5  Given defendant's representation that "over 17,000 pages of documents" have already been

6  exchanged during discovery in this case, the court declines to order needless production of

7  additional pages where an interrogatory would suffice.  (Joint Statement at 21.)  Also, given that

8  plaintiff has apparently recently propounded such an interrogatory (Joint Statement at 21) as a

9  result of meeting and conferring, perhaps plaintiff agrees.  Plaintiff's motion to compel

10 documents responsive to RFP Nos. 37-38 is denied.

11         c.    Documents Regarding Tenant Mix and Consideration Of Changed Name
              At Promenade
12

13         Plaintiff's RFP No. 54 seeks "ANY DOCUMENTS comparing the tenant

14 composition, tenant mix, or construction of Promenade Shops at Orchard Valley and the

15 Lifestyle Outlets at Manteca."  (Joint Statement at 22.)  Plaintiff's RFP No. 55 seeks "ANY

16 DOCUMENTS concerning the change of name, or the consideration of a change of name of the

17 PROMENADE from the "Promenade Shops at Orchard Valley" to the "Lifestyle Outlets of

18 Manteca."  (Joint Statement at 22.)  Defendant objected to RFP Nos. 54-55 on grounds of

19 overbreadth, relevance, and "trade secret privilege."  (Id.)

20         (i)    Trade Secret

21         Although defendant's initial responses to RFP Nos. 54-55 included objections on

22 the basis of "trade secret privilege" (Joint Statement, 22), defendant has not advanced any

23 supporting arguments or otherwise bolstered its "trade secret" objections within the Joint

24 Statement.  (Id.)  Because defendant has not asserted any grounds for a "trade secret" objection,

25 these objections are not well-taken.

26 ////

1          (ii)    Relevance

2          Despite defendant's objections on grounds of relevance, the court agrees with

3 plaintiff that both requests seek information relevant to the claims and defenses in this dispute.

4 In plaintiff's words, defendant's contemplating changing the name of the subject shopping center

5 and/or changing the composition of the intended tenants therein might "evidence[] Manteca's

6 unilateral decision to change the parties' understanding of what was contemplated at the time of

7 entering into the Lease." (Joint Statement at 24.)  If a landlord's plans for tenant mix,

8 construction and the name of a shopping center changed during the time between Lease

9 negotiation/signing and Lease performance, such change might bear upon the interpretation of

10 allegedly ambiguous Lease terms.  It could also conceivably bear on whether a party changed its

11 approach to performance of obligations under the Lease after facing difficulties attempting to

12 perform in accordance with what might have originally been suggested during Lease

13 negotiations.  Documents "comparing" characteristics of tenants between shopping centers of

14 different "themes" could conceivably bear on these issues as well.

15          While defendant argues that plaintiff's "implied covenant claim does not allege

16 any breach for Manteca's considering a change in name" (Joint Statement at 24), this fact does

17 not mean that defendant's considering a name change is irrelevant to this dispute.  Whether

18 defendant changed its goals about the tenant mix at the Promenade in the period between Lease

19 negotiations and Lease performance appears at least minimally relevant to a determination of

20 whether defendant acted in good faith at all times during the period, and whether defendant was

21 ever obligated to provide a particular "theme" shopping center and/or particular types of tenants

22 to join plaintiff therein.  It also appears at least minimally relevant to an interpretation of the

23 Operating Co-Tenancy Condition and defendant's ability (or inability) to find tenants for and/or

24 complete construction of leaseable space for additional planned tenants of the Promenade.

25 Accordingly, defendant's relevance objection is not well-taken with respect to RFP Nos. 54-55.

26 ////

1          (iii)    Overbreadth

2          Defendant's objections on grounds of overbreadth are not well-taken.  Plaintiff

3  has represented a willingness to further narrow Request No. 54 to encompass only "documents

4  defining the boundaries, planned use, tenant content, the leaseable area and gross leaseable area

5  of the Shopping Center, and timing for construction of the buildings, specifically commencement

6  and completion of construction, occupancy of buildings and alterations to either" (Joint

7  Statement at 23).  After plaintiff's additional narrowing, the request would apparently seek all

8  documents "comparing" any of these attributes of "the Promenade Shops at Orchard Valley" with

9  those of the "Lifestyle Outlets at Manteca."  With this further narrowing, it cannot be said that

10  Request No. 54 is overbroad.

11          Similarly, Request No. 55 is not overbroad.  The request seeks documents

12  concerning the "change of name" (including "consideration of" a name change) from "the

13  Promenade Shops at Orchard Valley" to the "Lifestyle Outlets of Manteca."  Defendants have not

14  convincingly explained how the request is overbroad.  The fact that "there is no covenant in the

15  Lease that the Shopping Center had to be a Lifestyle center or keep a certain trade name" (Joint

16  Statement at 24) does not necessarily make the request irrelevant or overbroad; defendant has not

17  cited any authority suggesting that only documents relating to *express* contractual covenants can

18  be relevant or appropriate in scope.  Similarly, defendant's representation that it has produced

19  some "tenant ledgers" that are responsive to this request (Joint Statement at 24) does not bear on

20  the breadth or relevance of the request, and is not a persuasive valid objection to the RFP.

21  Defendant's overbreadth objection is not well-taken.

22          Accordingly, for the reasons described above, plaintiff's motion to compel the

23  production of documents responsive to RFP No. 54 (as narrowed and described herein) and RFP

24  No. 55 is granted.  Defendant shall have 30 days from the date of this order to produce the

25  responsive documents.

26  ////

1                 3.      <u>Request for Reasonable Expenses Including Attorney's Fees</u>

2           As expressly provided by Rule 37(a)(5)(A), the court "shall" require the moving

3 or opposing party to pay reasonable expenses *unless* the motion or opposition is substantially

4 justified. Substantial justification is found when reasonable people could disagree as to whether

5 the requested discovery was required. <u>Eureka Financial Corp. v. Hartford Acc. and Indem. Co.</u>,

6 136 F.R.D. 179, 185-86 (E.D. Cal. 1991) (citing cases). No bad faith is required; even negligent

7 failures to allow reasonable discovery may establish cause for imposing sanctions under Rule 37.

8 <u>Id.</u> However, in imposing sanctions under Rule 37, the court has great discretion and its

9 decision is only reviewed for an abuse of that discretion." <u>Id.</u>

10           Because the pending motion will be granted in part and denied in part, the court

11 "may," after giving the parties an opportunity to be heard, "apportion the reasonable expenses for

12 the motion." Fed. R. Civ. P. 37(a)(5)(C). Both parties took positions that may not have been

13 substantially justified: for instance, plaintiff's oversimplified reading of <u>Burlington Northern</u> and

14 defendant's unpersuasive "relevance" objections given the minimal standard for "relevance" in

15 discovery. Accordingly, the court declines to apportion expenses, and each party shall bear their

16 own expenses in connection with this dispute.

17           In light of the foregoing, IT IS HEREBY ORDERED that:

18           1.      Plaintiff's motion to compel production of all *privileged* documents

19 responsive to RFP Nos. 18-20, is denied without prejudice. At this time, the court declines to

20 find that the privilege has been waived with respect to these RFPs.

21           2.      Plaintiff's motion to compel defendant to produce documents

22 responsive to RFP No. 33 is granted. Subject to the additional parameters that have been already

23 agreed-upon during the parties' meet and confer process, the request has been further narrowed to

24 seek all correspondence between defendant and Poag regarding "proposed and actual tenant lists

25 – whatever titled (ledger, list, roster, etc.) – during every stage of development and construction"

26 and correspondence regarding "actual or planned tenant mix and tenant numbers." (Joint

Statement at 17-18.)  Defendant shall have 30 days from the date of this order to produce the responsive documents.

       3.     Plaintiff's motion to compel documents responsive to RFP No. 36 is granted.   Defendant shall have 30 days from the date of this order to produce the responsive documents.

       4.     Plaintiff's motion to compel documents responsive to RFP Nos. 37-38 is denied.

       5.     Plaintiff's motion to compel the production of documents responsive to RFP No. 54 (as narrowed and described herein) and RFP No. 55 is granted.  Defendant shall have 30 days from the date of this order to produce the responsive documents.

       6.     Both parties' requests for monetary sanctions in connection with this motion are denied.

       **IT IS SO ORDERED.**

DATED:  June 13, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE